# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-2205/2403

_____

| | | |
|---|---|---|
| Robert J. Norbeck, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Basin Electric Power Cooperative, | * | |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: May 8, 2000
Filed: June 15, 2000

_____

Before WOLLMAN, Chief Judge, FAGG, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Robert J. Norbeck was Chief Auditor at Basin Electric Power Cooperative (Basin) until an administrative reorganization in 1992 which moved him to a position with less responsibility. In January 1993 he was terminated after he wrote a letter demanding reinstatement to his former position and alluding to concerns about the billing of costs under one of Basin's federal contracts. Two years later Norbeck sued Basin under the False Claims Act, 31 U.S.C. § 3729 et seq. (1994) (the Act), for

defrauding the federal government[1] and in this case for terminating him in retaliation for protected activity under the Act. His retaliation claim was tried to a jury which returned a verdict in favor of Basin. Norbeck appeals from that result, and Basin cross-appeals the district court's award of attorney fees to Norbeck. We affirm in part and reverse in part.

Basin is a regional power cooperative located in North Dakota that generates electricity and distributes it to member cooperatives in Colorado, Iowa, Minnesota, Montana, North Dakota, South Dakota, Wyoming and Nebraska. Norbeck was hired by Basin in 1977 and became its Chief Auditor in 1985. He held this position until 1992, when Basin merged its Audit Department into a newly formed Tax, Audit, and Insurance Department as part of an administrative reorganization. Norbeck was reassigned to the position of Special Projects Auditor with the same salary but less responsibility than his previous job. While in this position, Norbeck completed no assignments and actively pursued opportunities at other companies. He was later given a different assignment at Basin in which he reported to the General Manager. On January 8, 1993 Norbeck wrote a letter to the General Manager alluding to concerns about the billing of costs under a Basin contract with Western Area Power Administration, a unit of the United States Department of Energy, and stating that "I am expecting to be reinstated to the title, responsibilities, and authority of Chief Auditor." Basin terminated Norbeck on January 29, 1993.

Two years after his termination, in January 1995, Norbeck brought two lawsuits against Basin under the Act. The Act provides a mechanism by which an individual can sue a company for fraud on behalf of himself and of the federal

---

[1]That case was tried to the court and resulted in a $43 million judgment against Basin. Its appeal is awaiting oral argument. United States ex. rel. Norbeck v. Basin Electric Power Cooperative, No. A1-95-003 (D.N.D. filed March 26, 1999), *appeal docketed*, Nos. 99-3122, 99-3216, and 99-3450 (8th Cir. August 11, 1999).

government. 31 U.S.C. § 3730(b) (1994). It also provides a civil remedy for employees who are retaliated against by their employers for bringing such actions or otherwise engaging in activity protected under the Act. See 31 U.S.C. § 3730(h). In his action under 31 U.S.C. § 3730(b), Norbeck alleged that Basin had overcharged WAPA under the contract alluded to in the January 1993 letter. The United States Department of Justice intervened, adopting some of Norbeck's claims. The action was tried to the court, which found for Norbeck and the government and awarded judgment against Basin in the amount of $43 million (the relator's share of the award was set at 30%).

Norbeck's retaliation claim in this case was tried to a jury. Basin put on evidence from its employees, including the General Manager, to show that Norbeck's work performance had declined in his final two years of employment. The jury found in a special verdict that Norbeck had proven that he had engaged in activity protected by the Act, that Basin knew or should have known that he was engaged in such activity, and that Basin's decision to terminate him was motivated in whole or in part by retaliatory animus. As instructed by the district court, the jury then went on to consider whether Basin had proven that it would have fired Norbeck even if he had not engaged in protected activity. The jury found in the affirmative on this question and awarded Norbeck no damages.

Following trial, Norbeck moved for attorney fees. The district court noted that this circuit had not addressed the availability of attorney fees in mixed motive retaliation claims under the Act and turned to Title VII law for guidance. It concluded that a plaintiff in a dual motive retaliation case could recover attorney fees if he had proven that an impermissible factor played some role in the adverse employment action. It went on to award Norbeck approximately $46,000 in attorney fees.

On appeal, Norbeck argues that the district court erred in giving a dual motive

instruction to the jury. He asserts that cases holding that such an instruction is available either arise under different whistleblower statutes or in factually distinguishable circumstances and that allowing a dual motive defense reduces the legal protection for whistleblowers and undermines the effectiveness of the Act. Basin argues that although the Act does not expressly discuss a dual motive defense, the legislative history makes clear that such a defense is available. On its cross-appeal, Basin argues that the district court erred in awarding attorney fees because such fees are not available to a losing plaintiff in retaliation cases.

Norbeck's appeal is based on the dual motive instruction given to the jury. He contends that the court committed reversible error by instructing that Basin would be entitled to a verdict in its favor if it could prove that Norbeck would have been fired regardless of engaging in activity protected under the Act.[2]

_____

[2]That court's dual motive instruction was:

> In order to succeed with his False Claims Act Retaliation Claim, [Norbeck] must prove each of the following three elements by a preponderance of the evidence: (1) Norbeck was engaged in conduct protected under the False Claims Act; (2) Basin Electric was aware that Norbeck was engaged in such conduct; (3) Basin Electric discriminated against him in retaliation for engaging in protected activity by firing him. If Norbeck proves each of these elements by a preponderance of the evidence, subject to the defense of Basin Electric which is discussed later in these instructions, a verdict must be rendered in his favor.

The court subsequently defined Basin's defense this way: "If you have found that [Norbeck] engaged in 'protected activity' and that his firing was motivated in part by Basin Electric's knowledge of this activity, then the burden shifts to Basin Electric to show by a preponderance of the evidence that [Norbeck] would have been fired even if he had not engaged in 'protected activities.'"

-4-

Each court that has addressed the question of whether a dual motive affirmative defense is available to an employer has concluded that it is. See U.S. ex rel. Yasudian v. Howard Univ., 153 F.3d 731, 736 n.4 (D.C. Cir. 1998); Mann v. Olsten Certified Healthcare Corp., 49 F. Supp. 2d 1307, 1316 (M.D.Ala. 1999); Mikes v. Strauss, 889 F. Supp. 746, 754 (S.D.N.Y. 1995). The Act itself simply provides that "[a]ny employee . . . who is discharged . . . because of lawful acts done . . . in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730(h) (1994). A plaintiff must therefore prove that the discharge was because of protected activity, but the statute does not explicitly say whether the plaintiff must prove that retaliation was the only cause in order to recover. Likewise, no mention is made of an affirmative defense for an employer. The legislative history indicates, however, that Congress intended a two step inquiry before relief could be available, similar to other whistleblower statutes:

> Section [3730(h)] provides relief only if the whistleblower can show by a preponderance of the evidence that the employer's retaliatory action resulted 'because' of the whistleblower's participation in a protected activity. Under other Federal whistleblower statutes, the 'because' standard has developed into a two-pronged approach. One, the whistleblower must show the employer had knowledge the employee engaged in 'protected activity' and two, the retaliation was motivated, at least in part, by the employee's engaging in protected activity. Once these elements have been satisfied, the burden of proof shifts to the employer to prove affirmatively that the same decision would have been made even if the employee had not engaged in protected activity.

S. Rep. 99-345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5300. The legislative history has been persuasive to the other courts that have considered the issue, and we also conclude that the district court did not err in giving a dual motive instruction.

Norbeck argues for the first time on appeal that the jury should have been

required to find that Basin's non-retaliatory reasons for firing him were legal. Basin argues that our review is only for plain error because Norbeck failed to raise this issue below and that in any event its other reasons for firing him were unrelated to his protected activity. The general objection Norbeck made to the dual motive instruction was insufficient to preserve the new argument he seeks to raise on appeal. A specific objection was needed to "bring into focus the precise nature of the alleged error." Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir. 1998) (internal quotation marks and citations omitted). Moreover, Norbeck hasn't shown that the court's failure to give such an instruction prejudiced substantial rights or resulted in a miscarriage of justice.[3] See id.

On its cross-appeal, Basin asserts that the district court erred in awarding Norbeck attorney fees because he did not prevail on his retaliation claim. Norbeck did not address the cross-appeal in his briefs, but at oral argument he asserted that fee issues under the Act should be analyzed under Title VII precedent and that his award should be approved.

The Act provides that "[a]ny employee who is discharged . . . because of [protected activity] shall be entitled to all relief necessary to make the employee

---

[3]Norbeck relies on distinguishable cases in which employees were terminated for conduct that was closely related to legally protected activity. See, e.g., Reef Indus., Inc. v. NLRB, 952 F.2d 830 (5th Cir. 1991) (employee's 'gift' of insulting t-shirt to supervisor sufficiently related to protected organizing activity to bar discharge on that ground); NLRB v. Lummus Indus. Inc., 679 F.2d 229 (11th Cir. 1982) (employee's allegations of 'sell-outs' and bribery of union officials related to protected organizing activity and barred discharge on that ground); Trustees of Boston Univ. v. NLRB, 548 F.2d 391 (1st Cir. 1977) (employee's 'personality clash' with supervisor closely related to her protected organizing activity and barred discharge on that ground). In contrast to these cases, Norbeck's protected activity was not related to the reasons offered by Basin for his termination (insubordination and poor work performance).

whole. Such relief shall include reinstatement . . . back pay . . . and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." 31 U.S.C. § 3730(h) (1994). As previously discussed, the ultimate issue of causation a plaintiff needs to establish is that the discharge was solely because of protected activity, and a finding of dual motive exonerates the employer.

The leading case dealing with dual motive issues is Mt. Healthy School District Board of Education v. Doyle, 429 U.S. 274 (1977), in which the Supreme Court held that such a defense could prevail in employment cases raising First Amendment claims. When such a plaintiff has demonstrated that his protected conduct was a "substantial" or "motivating" factor, the burden shifts to the employer to show that it would have reached the same decision even in the absence of the protected conduct. Id. at 287. The Court noted the unfairness of denying such a defense to employers: "[a] rule of causation which focused solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire, could place the employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." Id. at 285.

A similar analysis was applied by the Court to Title VII employment discrimination actions in Price Waterhouse v. Hopkins, 490 U.S. 228, 242 (1989), but Price Waterhouse was later superseded in part by the Civil Rights Act of 1991. See Wolff v. Brown, 128 F.3d 682, 683-84 (8th Cir. 1997). The 1991 statute provided that a Title VII plaintiff who shows that an impermissible factor motivated an adverse employment action could receive some relief, including attorney fees, even if the employer were to prevail on its dual motive defense. See 42 U.S.C. § 2000e-2(m); see also Wolff, 128 F.3d at 684. Nevertheless, "conspicuously absent" from this section of the Civil Rights Act is reference to retaliation claims. McNutt v. Bd. of Trustees of the Univ. of Ill., 141 F.3d 706, 709 (7th Cir. 1998).

In McNutt, the Seventh Circuit declined to extend the limited relief of 42 U.S.C. § 2000e-2(m) to plaintiffs in dual motive retaliation cases after noting that Congress had explicitly addressed retaliation claims in other sections of the Civil Rights Act of 1991 but not in this one. Id. The other circuits that have addressed the question have similarly relied on the plain language of the statute and declined to extend it to plaintiffs in dual motive retaliation cases. See Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 552 n.7 (4th Cir. 1999); Woodson v. Scott Paper Co., 109 F.3d 913, 935 (3d Cir. 1997); Tanca v. Nordberg, 98 F.3d 680, 684 (1st Cir. 1996); see also Lewis v. Young Men's Christian Assoc., 208 F.3d 1303, 1305 (11th Cir. 2000) (Civil Rights Act does not apply to dual motive retaliation claim under ADEA). But see DeLlano v. North Dakota State Univ., 951 F. Supp. 168. 170 (D.N.D. 1997) (holding that Civil Rights Act provisions applied to dual motive retaliation cases); Hall v. City of Brawley, 887 F. Supp. 1333, 1346 (S.D.Cal. 1995) (same). We find this analysis persuasive and conclude that the Civil Rights Act of 1991 did not change the Mt. Healthy/Price Waterhouse analysis applicable to retaliation claims under the Act and that the district court erred in awarding Norbeck attorney fees.

In conclusion, we reverse the award of attorney fees and otherwise affirm and remand for entry of judgment in favor of Basin.


A true copy.

        Attest:


        CLERK, U.S. COURT OF APPEALS,  EIGHTH CIRCUIT.